PATCHAK v. TOWNSHIP OF LANSING.

1. MUNICIPAL CORPORATIONS—ZONING ORDINANCES—POLICE POWER.
   Municipal zoning ordinances, when reasonable in their provisions, are a valid exercise of the police power.

2. SAME—ZONING ORDINANCES—REASONABLENESS.
   The reasonableness of a municipal zoning ordinance is recognized as the test of its legality.

3. SAME—ZONING ORDINANCES—REASONABLENESS.
   Each case involving the determination of the reasonableness of the application of a municipal zoning ordinance must be determined on the basis of its own facts and circumstances.

REFERENCES FOR POINTS IN HEADNOTES
[1, 8]  58 Am Jur, Zoning § 18.
[2]  58 Am Jur, Zoning §§ 21, 22.
[3]  58 Am Jur, Zoning § 22.
[4]  58 Am Jur, Zoning § 256.
[5]  58 Am Jur, Zoning § 141.
[6]  58 Am Jur, Zoning § 209.
[7]  58 Am Jur, Zoning § 155.
[9]  58 Am Jur, Zoning § 19.
[10]  58 Am Jur, Zoning § 151.

4. SAME — ZONING ORDINANCES — BURDEN OF ESTABLISHING INVALIDITY.

The presumption of validity attends municipal zoning ordinances and the burden of proof as to their invalidity or unreasonableness of their application is on one challenging such ordinance to establish his claim.

5. SAME—ZONING ORDINANCES—TRAILER CAMPS—VALUE—BURDEN OF PROOF—EVIDENCE.

Plaintiff trailer camp operator who merely showed that 10-acre portion of 15-acre tract would be more valuable if trailer camp was permitted thereon than uses allowed did not sustain burden of proof that zoning ordinance which did not permit trailer parks in his area was invalid as to 10-acre tract, hence, he is not permitted to extend his pre-existing 5-acre camp to cover more of his tract.

6. SAME—ZONING—NOTICE.

The purchaser of property is chargeable with knowledge of the zoning in effect when the property was purchased.

7. SAME—ZONING—NONCONFORMING USE.

The purchaser of property which had been zoned before the purchase has no greater right to use the property for a nonconforming use than his vendor had.

8. SAME—PROPERTY—POLICE POWER—PUBLIC HEALTH, MORALS, SAFETY, AND WELFARE.

Property is held subject to right of government to regulate its use in the exercise of the police power so that it shall not be injurious to the rights of the community or so that it may promote public health, morals, safety, and welfare.

9. SAME—REGULATIONS—PROPERTY.

Municipal regulations may result to some extent practically in the taking of property, or the restriction of its use and yet not be deemed confiscatory or unreasonable.

10. TOWNSHIPS—ZONING ORDINANCES—TRAILER CAMPS.

Record presented in suit by owner of 15-acre tract of land on 5 acres of which a trailer camp was located before *held*, not to disclose that adoption of township zoning ordinance which made trailer camp use of such land a nonconforming use was so patently unreasonable and arbitrary as to be unconstitutional and void as to 10-acre portion of parcel which had never been used as a trailer park (Lansing Township Ordinance No 8).

Appeal from Ingham; Hughes (Sam Street), J. Submitted September 21, 1960. (Docket No. 55, Calendar No. 48,283.) Decided October 12, 1960. Rehearing denied December 1, 1960.

Bill by Alexander P. Patchak and Stella C. Patchak, doing business as Riverview Trailer Park, against the Township of Lansing to declare zoning ordinance void as to them. City of Lansing, a municipal corporation, intervened as party defendant upon annexation of affected area. Decree for plaintiffs. Intervening defendant appeals. Reversed and remanded for dismissal.

*Leo A. Farhat (James E. Burns,* of counsel), for plaintiffs.

*Joseph Lavey,* City Attorney *(Claude J. Marshall,* of counsel), for intervening defendant.

Kavanagh, J. Once again we are cast in the role of a glorified zoning board. Defendant city of Lansing has appealed from a decree of the Ingham county circuit court, in chancery, in which the court held that ordinance No 8 of the township of Lansing as applied to plaintiffs' 15 acres was void; that the action of the township board in refusing to rezone the 15 acres was arbitrary, capricious, and confiscatory; that the reasonable and proper use of the property was for a trailer camp park; and that the entire 15 acres could be developed and modernized as such, continuing its nonconforming use subject to certain restrictions.

Plaintiffs' predecessor in title, on October 5, 1942, owning 15 acres of land on the south side of West Mt. Hope avenue in the township of Lansing, made application to the Michigan department of health for a permit to construct and operate a trailer coach park of 4 acres located at 3407 West Mt. Hope avenue. The annual license fee of $25 was paid.

In September, 1943, the then owner, Mr. Hause, filed an application to operate a trailer coach park and add to the existing facilities. No acreage was given. The following year an application to operate a trailer park of 2 acres was filed by Mr. Hause and license was approved on October 12, 1944. An application was made by Mr. Hause in the fall of 1945 for a trailer coach park of 3 acres.

The township board of the township of Lansing adopted its zoning ordinance No 8, which became effective throughout the township on October 26, 1945. The property now owned by the appellees, then owned by Mr. Hause, and most of the surrounding land, was, by ordinance No 8, zoned "D" small farms and agriculture. The ordinance placed trailer camps in "E" apartment-shop zone.

In September, 1946, ordinance No 8 being operative, the owner, Mr. Hause, again made an application to operate a trailer park of 2 acres and alter existing facilities. License fee of $25 was paid. Mr. Hause made application each year thereafter up to the sale of the property on October 23, 1953, to appellees, who thereafter made applications to the Michigan department of health for the year 1954 and following years up to the time of the trial.

During all the years the trailer park was operated, only the north 5 acres was actually used as a trailer coach park. The license fee paid each year was $25. The acreage was designated as 5 acres or less for all years 1942 through 1957, except 1947, 1953, 1955, and 1956, when the acreage was designated as 15 acres in the application, and in the years 1943, 1949, and 1954, when no acreage was given in the applications.

During the year 1954, after Hause had sold the premises on October 23, 1953, to appellees, the township of Lansing amended zoning ordinance No 8, removing trailer parks from "E" apartment-shop

zone and placing trailer coach parks in "G" light industrial zone, and requiring the location of such sites to be approved by the township planning commission, board of appeals and township board.

In May, 1956, appellees made application to have their property, being 15 acres, rezoned from "D" to "G." Their application being denied, appellees took steps under the provisions of ordinance No 8 and amendments thereto to expand their trailer coach park to the full 15 acres. Being denied that right, they instituted the present suit on November 7, 1956.

On July 30, 1958, the property became a part of the city of Lansing following annexation proceedings. The written opinion of the trial court was filed June 3, 1958. In this opinion the trial court found, as a matter of fact, that the proofs showed no trailers had been located on the south 10 acres. It further found little, if any, use had been made of the south 10 acres; that it had remained as an open space—like a country backyard—to the trailer park; and that some incidental drainage and other minor uses of the land closest to the trailer park had been made. The trial court further stated in its opinion:

"That it could be an unreasonable use of police power for the government of Lansing township to restrict the plaintiffs to the north 5 acres under all the facts and circumstances shown to exist in relation to the lands of plaintiffs."

The court further found:

"The area was farm land when the trailer park was built about 1943. It was the same all around the trailer park in 1945 when the ordinance was adopted. It is the same today except some of the areas to the west, northeast and east have been subdivided."

The court went on to say:

"That the work permitted to be done under this holding, is improvement, modernization, and development of an existing trailer park and not an extension of said park. The zoning classification of "D" small farms is not set aside by this court. The plaintiffs' north 10 acres will remain, even when fully developed, as a nonconforming use."

The court then set forth some restrictions under which it could be used.

On July 24, 1958, following the filing of the opinion, plaintiffs made a motion for rehearing, alleging that to comply with the requirements of the court's opinion would deprive plaintiffs of any use whatsoever of the south 5 acres of their property, and to limit its use by set-backs from the lot lines, in the fashion the court suggested, would cost plaintiffs $32,000. Plaintiffs asked that the opinion be changed.

Oral hearings were had on the motion for rehearing, and on other motions presented, on February 2, 1959. The trial court admitted he had become confused in drafting his original opinion and described the limitation to the north 10 acres a mistake and authorized its correction in the decree, so that plaintiffs could use their entire 15 acres as a nonconforming use. It is impossible to tell what reasons the court had for holding the ordinance void as to the 15 acres, except from the following language it might be inferred that, contrary to his previous findings of fact, he now was finding as a matter of law a nonconforming use as to the 15 acres:

"That it shall be nonconforming in the zoning as it now is or was at the time of the trial, and that whatever the zoning is shall remain. The trailer park will be permitted to stay as a nonconforming use. * * *

"The evidence indicated in some instances away back years ago the whole parcel was considered as a trailer park, even though they never built back from Mt. Hope, perhaps the north 5 acres, and when they went down to pay the fee, when Mr. McKim was in office, sometimes it said 10 acres and sometimes 15 acres."

Appellees made no attempt to show, and do not now argue, that Lansing township zoning ordinance No 8 as an ordinance is unconstitutional and void, contending only that it was unconstitutional and void as applied to their land.

Justice Carr said in *Anderson* v. *City of Holland,* 344 Mich 706, 709:

"The legal principle is firmly established that zoning ordinances, when reasonable in their provisions, are a valid exercise of the police power. *Village of Euclid* v. *Ambler Realty Company,* 272 US 365 (47 S Ct 114, 71 L ed 303, 54 ALR 1016); *Austin* v. *Older,* 283 Mich 667. The reasonableness of such an ordinance is recognized as the test of its legality. *Hitchman* v. *Township of Oakland,* 329 Mich 331. In the application of the test indicated it necessarily follows that each case of this character must be determined on the basis of its own facts and circumstances. *Senefsky* v. *City of Huntington Woods,* 307 Mich 728 (149 ALR 1433). It must also be borne in mind that the presumption of validity attends zoning regulations, and that the burden of proof is on one challenging such an ordinance to establish his claim. *Portage Township* v. *Full Salvation Union,* 318 Mich 693; *Northwood Properties Company* v. *Royal Oak City Inspector,* 325 Mich 419."

It is the duty of plaintiffs, who challenged the zoning classification, to show by competent evidence that the regulation has no substantial relation to public health, morals, safety, or general welfare.

A reading of the entire record clearly shows plaintiffs produced no evidence to this effect. They merely claim the property is more valuable as a trailer coach park than it would be under the classification given it. This is not the test. Mr. Justice SMITH, in *Brae Burn, Inc.*, v. *City of Bloomfield Hills*, 350 Mich 425, said (pp 433, 434):

"Disparity in values between residential and commercial uses will always exist. In the leading case of *Village of Euclid* v. *Ambler Realty Company*, 272 US 365 (47 S Ct 114, 71 L ed 303, 54 ALR 1016), Mr. Justice Sutherland, in upholding the ordinance, noted that the property involved was worth about $10,000 per acre for industrial use, as compared with $2,500 per acre for residential use. If such a showing serves to invalidate an ordinance the efforts of our people to determine their living conditions will be hopeless. To avoid 'confiscation' in this sense (the obtaining of the highest dollar for one particular lot) will result in confiscation of far greater scope in property values in the municipality as a whole due to its inability to control its growth and development. It must be stressed that we are not, on this record (as we pointed out in *Anderson* v. *City of Holland*, 344 Mich 706, 710) 'dealing with a situation in which the property involved is unsuitable for residential purposes and has little or no value if so restricted.' In such case the issue of confiscation is properly before us. See Yokley's discussion (1 Yokley, Zoning Law and Practice [2d ed], pp 47, 48) of our *Fenner* v. *City of Muskegon* case, 331 Mich 732."

In this instance we do not have a case where the land was not suitable to the purpose of the classification. It is not a question of unsuitability for residential or any other purposes except small farms and agriculture. Clearly, the south 10 acres and all of the surrounding territory were, at the time the ordinance was adopted in 1945, suitable for the

uses enumerated under class "D".* The entire area, west, south, and east, was composed of small farms. This situation existed at the time the zoning ordinance was adopted in 1945. The plaintiffs were chargeable with the knowledge of the zoning when they purchased the property in 1953. The purchasers had no greater right to use the property for a nonconforming use than their seller had. *Stevens* ·v. *Township of Royal Oak,* 342 Mich 105. Plaintiffs' right to use the north 5 acres as a nonconforming use has never been disputed and is not involved in this lawsuit.

Competent evidence was introduced by defendants to show that in 1945 it was good planning and zoning to classify this property as "D" small farms and agriculture. No evidence to the contrary was introduced by plaintiffs. New residential subdivisions have been developed to the north, west and south of the property. The developers, no doubt, relied upon the fact that the 5-acre nonconforming use would not be expanded to their detriment.

The only argument of plaintiffs appears to be that the township zoning prohibited them from using the 15 acres for what they considered to be its best

---

* Class "D" permitted the following uses:
(1) Any use permitted in the "A" residential zone.
(2) Agriculture or farming.
(3) Private stables.
(4) Greenhouses if they are not used for conducting retail business.
(5) Churches.
(6) Hospitals.
(7) Veterinary hospitals and clinics.
(8) Cemeteries.
(9) Airport or landing field.
(10) Accessory buildings and uses customarily incident to any of the above uses.
(11) Mining of natural resources.
(12) Provided that nothing ·in the foregoing exceptions shall prohibit the retail disposition of agricultural produce grown upon the premises; nursery and greenhouse stock grown upon the premises may also be retailed provided that no separate retail store, stockroom or display unit is erected, constructed, installed, or maintained for such purpose.

use and, therefore, made the zoning arbitrary and unreasonable.

In *Austin* v. *Older,* 283 Mich 667, 677, this Court quoted with approval the following language from *State* v. *Hillman,* 110 Conn 92, 105, 106 (147 A 294):

" 'All property is held subject to the right of the government to regulate its use in the exercise of the police power so that it shall not be injurious to the rights of the community, or so that it may promote its health, morals, safety, and welfare. * * * Regulations may result to some extent practically in the taking of property, or the restriction of its use and yet not be deemed confiscatory or unreasonable. * * * Courts will not hold laws, ordinances, or regulations adopted under sanction of law to be unconstitutional unless they are clearly unreasonable, destructive, or confiscatory.' "

Clearly, this record discloses a failure on the part of plaintiffs and appellees to carry their burden of proof—that the classification is unreasonable tested by these established principles. It is clear from this record that the township had a right to plan its future growth and development and it had authority to act. In the presence of the presumption of constitutionality and in the absence of contrary proof, we cannot say from this record that the classification was so patently unreasonable and arbitrary as to be unconstitutional and void.

The only other question is whether or not the nonconforming provisions of Lansing township ordinance No 8 applies to and covers the entire 15 acres now owned by appellees. The record discloses, and the trial court found as a fact, that the trailer park was in operation only on a portion of the north 5 acres of the land in question at the time of adoption of the ordinance. The court further found as a matter of fact that no more than the north 5 acres was ever used for a trailer park. While it is true

the 1947 application indicated the acreage as 15, it is apparent the applicants were not seeking a license for the 15 acres since the fee paid was $25. The applicable statutory language* provided in part as follows:

"Sec. 5. Upon presenting his application, together with all plans and specifications hereinbefore enumerated or prescribed by the State health commissioner, the applicant shall pay to the person authorized to accept his application *a license fee equal to $25 for each 10 acres, or fraction thereof,* of land to be used as a site, lot, field, or tract of land upon which a trailer coach park will be constructed or altered, operated and maintained and take a receipt therefor." (Emphasis supplied.)

It is clear, then, that no application was sought and no license was given for the 15 acres. No nonconforming use was proven as to the south 10 acres. The trial court erred in finding the ordinance unconstitutional and void as to this portion of the parcel.

The decree entered by the trial court is hereby reversed and remanded for the entry of a decree dismissing the bill of complaint. Appellant shall have costs.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and SOURIS, JJ., concurred.

* CL 1948, § 125.755 (Stat Ann 1957 Cum Supp § 5.278[5]) repealed by PA 1959, No 243.