## STATE OF VERMONT

## ENVIRONMENTAL COURT

City of St. Albans, Plaintiff,

v.                                                    }
                                                      }
Alan Hayford, Beverly                 }        Docket No. 161-9-03 Vtec
Hayford, Gregory P. Benoit,        }
Deborah Kane, and                     }
Occupants[1]/Tenants of Apt.#6
at 53 High St., Defendants.

Decision and Order on Defendants' Motion for Summary Judgment

The City of St. Albans and its Zoning Administrator[2] filed this enforcement action under 24 V.S.A. § 4445 seeking injunctive relief prohibiting the use of the sixth dwelling unit (rear building) at 53 High Street as a residential rental unit, and under 24 V.S.A. § 4444 seeking monetary penalties for the violation. The City did not file this enforcement action under 24 V.S.A. § 4470(c) to enforce any of the past orders of the City' s former ZBA or present DRB.

Defendants Alan Hayford and Beverly Hayford are the former owners[3] of the property and Defendants Gregory P. Benoit and Deborah Kane are the current owners. Defendants Alan Hayford, Beverly Hayford, Gregory Benoit, and Deborah Kane are represented by Michael S. Gawne, Esq.; the City of St. Albans is represented by Robert E. Farrar, Esq. No occupants or tenants of the rear building have entered an appearance in this matter and the City has not sought a default judgment against any such tenants. If the apartment is vacant it may be possible to dismiss the complaint as to any such putative tenants, but no such motion or stipulation has been filed.

Defendants have moved for summary judgment on the question of whether the present enforcement action is barred by the statute of limitations provided in 24 V.S.A. § 4496(a). The following facts are undisputed unless otherwise noted.

Defendants Alan Hayford and Beverly Hayford purchased the property at 53 High Street in the City of St. Albans in mid-1976. As of their acquisition of the property, it contained two buildings relevant to this appeal: a main building with four rental units, and a separate building in the rear of the property (" the rear building" ) then in use in part as a print shop and in part as an attached garage that has since been removed or converted. The rear building is located approximately four feet from the rear (east) property line and approximately two feet from the south side property line. The buildings existed on the property prior to the adoption of zoning in the City of St. Albans.

At some time in the summer of 1976, the Hayfords began repair work on the rear building. In a letter dated September 21, 1976, the City' s Building Inspector notified the Hayfords that they

needed a building permit for their repairs to the rear building. On September 22, 1976, the Hayfords applied for and received a building permit for general repair of the building for a nursery school. This was not a zoning permit, rather, it was a building permit under 24 V.S.A. § 3109.

By 1978, the Hayfords had begun the day care or nursery school use of the rear building. No information has been provided as to whether the people operating the nursery school or day care lived in the main building on the property, nor whether the rear building's use as a day care or nursery school was considered an accessory use or an accessory building at that time.

Under the older of the two sets of Zoning Regulations[4] in evidence in Docket No. 154-9-01 Vtec, the rear building was non-conforming with the south side setback, regardless of whether it was considered an accessory building or a principal building. See Table 204.4. As a garage or print shop or day care accessory to the use of the main building, the rear building would not have been non-conforming as to the rear setback, which is 4 feet for accessory buildings. However, as a second principal building with a use independent of that of the front building, the rear building would have been non-conforming with the rear setback, which is 20 feet for a principal building. Also, as a second principal building, the rear building also would have made the property non-conforming with § 304, which allows a maximum of only one principal building on a lot, unless approved under the planned residential development or planned unit development provisions of the ordinance. Under § § 602 and 604 of the older Zoning Regulations, changes to or expansions of non-conforming uses required prior Zoning Board of Adjustment (ZBA) approval.

Sometime in mid-1986, the Hayfords converted the interior space of the main building from four rental units to five rental units. The decision in Docket No. 154-9-01 Vtec overturned the Notice of Violation that had cited as a violation the fifth rental unit in the main building. No party appealed that decision and the fifth rental unit in the main building is not at issue in the present case.

At the end of 1986, the Hayfords acquired other property in the City in which they opened a second day care facility. Soon thereafter they consolidated both day care operations at that other property, leaving the rear building at 53 High Street vacant.

At some time in early 1987, the Hayfords may have discussed with the then-Zoning Administrator the potential for use of the rear building as an additional residential unit. The decision in Docket No. 154-9-01 Vtec determined that whatever discussion may have occurred, the City was not estopped from proceeding with enforcement regarding the residential unit in the rear building. No party appealed that decision and estoppel is not at issue in the present case.

Sometime in approximately the spring of 1987[5], the Hayfords appear to have started renting out the sixth residential unit, located in the rear building. City employees knew or could have known that the Hayfords were renting out the rear building residential unit by April 1, 1989, as shown on the listers' cards for 1989. In 1993 one of the apartments in the house was damaged by fire, and the Hayfords received a zoning/building permit to repair it.

In 1998, the Hayfords applied to the Zoning Administrator for a Certificate of Occupancy in connection with their efforts to sell the property. The Zoning Administrator denied the Certificate of Occupancy because the property did not comply with the zoning regulations, due to the lack of ZBA approval for (1) an expansion of a non-conforming use (due to the two principal buildings); (2) an area variance as the property is undersized for six residential units; and (3) possible variances for site plan requirements of the regulations, such as parking; and also due to the lack of a ' building permit' for the fifth unit in the main house. The Hayfords did not appeal the Zoning Administrator' s action to the DRB, and that denial therefore became final.

Instead, the Hayfords went before the then-Zoning Board of Adjustment (ZBA) for approval to convert the property from four dwelling units to six dwelling units, configured as five units in the main house and one unit in the rear building. The ZBA ruled that the property required five variances: regarding the lot area, the sideline setbacks, the rear setback for principal buildings, landscaping around the perimeter of a parking lot, and no parking within the required setbacks. The ZBA denied the variances in May of 1998; its decision was not appealed and became final.

In July of 1998, the Zoning Administrator issued a Notice of Violation for the " use of this property for six dwelling units when only four have received approval." The notice of violation stated that it was being recorded in the land records " in accordance with" 24 V.S.A. § 4496, although that statute only specifically provides for filing municipal land use permits in the land records, and not notices of violation. The Hayfords appealed that Notice of Violation to the ZBA, which failed to act on the appeal within the statutory time limit, and which therefore vacated the notice of notice of violation in its order of February 11, 1999. The same day as that ZBA ruling, the Zoning Administrator filed an enforcement action in Superior Court. However, summary judgment was ultimately granted in favor of the Hayfords in that enforcement action, due to the invalidity of the underlying Notice of Violation. Garceau v. Hayford, Docket No. S98-99 Fc (Franklin Superior Ct., May 29, 2001).

On July 11, 2001, the Zoning Administrator issued a new Notice of Violation, again stating as the violation " use of this property for six dwelling units," and directing the Hayfords to " cease and discontinue the use of two of the dwelling units," without specifying the rear building unit. The notice of violation also stated that it was being recorded in the land records in accordance with 24 V.S.A. § 4496. The Hayfords appealed this Notice of Violation to the Development Review Board (DRB), which upheld it in September of 2001. In August of 2001, the Hayfords also applied to the DRB for a variance to use the rear building as a dwelling unit but to eliminate one of the five dwelling units in the main building, resulting in a total of five dwelling units for the property. The DRB denied this variance at its September 17, 2001 hearing, and issued a written decision on September 26, 2001. The Hayfords appealed both DRB decisions to Environmental Court in Docket No. 154-9-01 Vtec. This appeal was assigned to the presiding judge at Franklin Superior Court, as the issues related to the earlier superior court case.

The decision in Appeal of Hayford, Docket No. 154-9-01 Vtec (Vt. Envtl. Ct., February 26, 2003), overturned the Notice of Violation as to the residential use of the fifth apartment in the main building, but sustained the Notice of Violation regarding the residential unit in the rear building. In that decision, the Court also held that the " statute of limitations on the enforcement

of the use of the rear building as a residence had not expired as of December 31, 2001." No party appealed that decision, and it became final.

Nevertheless, the Hayfords continued to rent out the sixth rental unit for several more months from the February 26, 2003 decision until they transferred the property to Defendants Gregory Benoit and Deborah Kane on June 30, 2003. On June 16, 2003, two weeks before the transfer of the property to Defendants Benoit and Kane, the Zoning Administrator filed the present complaint in Superior Court against Defendants Hayford under 24 V.S.A. § 4444 and § 4445, for injunctive relief and penalties regarding the residential rental use of the unit in the rear building. The complaint was amended on July 11, 2003 to add Defendants Benoit and Kane, and was transferred to Environmental Court in September of 2003, when it received the present Environmental Court docket number.

The statute of limitations set forth in 24 V.S.A. § 4496 by its terms applies to a municipal enforcement "action, injunction or other enforcement proceeding[6]" instituted under 24 V.S.A. § § 4444 or 4445 (or 1974a), "relating to the failure to obtain or comply with[7]" a required municipal land use permit. By its terms it does not apply to enforcement actions filed pursuant to 24 V.S.A. § 4470(c) regarding violations of a ZBA or DRB decision; that omission has been carried forward in the revisions to this statute passed this year (renumbered as § 4470(b) by 2004, No. 115, § 107). An enforcement proceeding subject to 24 V.S.A. § 4496(a) may be instituted " within 15 years from the date the alleged violation first occurred and not thereafter." The burden of proving when the alleged violation first occurred is on the defendant in the enforcement action.

In the present case, there is no question that the use of the rear building as a residential unit is a violation of the City's Zoning Regulations. The 1998 denial of the Certificate of Occupancy was not appealed, and the July 2001 Notice of Violation establishing that fact was upheld in Appeal of Hayford, Docket No. 154-9-01 Vtec (Vt. Envtl. Ct., February 26, 2003). Neither can now be contested. Moreover, Defendants Hayford sought two variances to allow the use of the rear building as a residential unit: once (as a sixth unit) in 1998 and once (as a fifth unit) in 2001. Both applications were denied by ZBA or DRB orders (and the 2001 application was also denied by the court on appeal) and cannot now be contested.

There is therefore no question that the City could have brought and could still bring an enforcement action for injunctive relief under 24 V.S.A. § 4470(c) to enforce the DRB and court orders denying the variances and upholding the notice of violation regarding the residential use of the rear building, regardless of whether the statute of limitations in 24 V.S.A. § 4496 bars injunctive relief under 24 V.S.A. § 4445 or penalties under 24 V.S.A. § 4444.

Because the foregoing analysis may affect the parties' relative positions regarding the resolution of the present litigation, the Court wishes to hold a telephone conference with them before issuing any additional ruling on the statute of limitations. Moreover, the owners were entitled to apply under the non-conforming use provisions of the Zoning Regulations in Article 6, to change the non-conforming use of the rear building from day care to a residential dwelling unit. That application requires DRB approval under standards more favorable to an applicant than the standards for a variance. The current owners may wish to apply for that approval under the

current Zoning Regulations. Accordingly, the Court will postpone ruling on the remainder of the Motion for Summary Judgment until we have held a telephone conference to discuss whether the City wishes to proceed instead (or as well) under 24 V.S.A. § 4470(c), and any other issues regarding the current status of this property.

In considering their positions in preparation for that telephone conference, the parties may also wish to examine a distinction that may be made between a violation due to the occurrence of construction or physical changes to a property or a building, and a violation due to the use of property. In analyzing the applicability of statutes of limitations, violations due to the use of property are generally considered to be so-called ' continuing' violations, that is, to recur with each day of violation. Compare 24 V.S.A. § 4496 with the statutes of limitations discussed in, e.g., Douglas v. City of Spokane, 609 P.2d 979 (1980) (statute of limitations applicable only to construction violations and not to use violations); Brown County v. Meidinger, 271 N.W.2d 15, 19 (S.D. 1978) (use violation is an ongoing daily violation rather than a one-time violation); City of Fontana v. Atkinson, 212 Cal. App. 2d 499, 509; 28 Cal. Rptr. 25, 32 (1963) (continuing violation).

The telephone conference is hereby scheduled for Friday, June 4, 2004, at 2:30 p.m. This decision is being faxed as well as mailed to the two parties today, given the short time frame for the conference and the fact that the statutory changes become effective on July 1, 2004. However, if the parties agree with each other that the June 4 date does not allow them enough time to consider their relative positions, they may so inform the Court and the conference will instead be scheduled for June 28, 2004.

Done at Barre, Vermont, this 1st day of June, 2004.

_____
Merideth Wright
Environmental Judge

**Footnotes**

1.    The materials provided by the parties in connection with their motion memoranda do not state whether the residential rental unit in the rear building is currently occupied.

2.    Upon transfer to this court it received the above caption, without the Zoning Administrator's name, to conform it to standard practice in municipal enforcement actions.

3.     The property seems to have passed into the Alan D. Hayford Revocable Trust as of March 15, 2000, with Alan Hayford as Trustee, until it was transferred to Gregory Benoit and Deborah Kane in June of 2003.

4.     The earlier of the two zoning ordinances admitted into evidence in Docket No. 154-9-01 Vtec may have been adopted in March of 1977, as it contains a zoning map entitled "proposed" zoning map and dated "12/76."

5.     The date may be contested by the City, or the City may instead be arguing that the statute of limitations should run from the earliest date that any City employee could have known about the violation. If the date is contested and must be resolved at trial, it should be able to be established from the information supporting Schedule E of the Hayfords' tax return for the appropriate year. Under 24 V.S.A. §4496, the burden is on the Hayfords to establish that date.

6.     An unresolved question of law is whether 'instituting' an 'other enforcement proceeding' under 24 V.S.A. §4444 includes the issuance of a Notice of Violation by the Zoning Administrator, in which case the July 2001 Notice of Violation would have tolled the statute of limitations for the enforcement sought in the present case.

7.     An unresolved question of law due to this language is whether the §4496 statute of limitations applies to enforcement actions filed under 24 V.S.A. §4444 or §4445 for direct enforcement of the zoning regulations, e.g., the prohibition of two principal buildings on a single lot, unrelated to 'obtaining or complying with' a municipal land use permit.